# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**COREY MARQUEE ADAMS (#357624)**                                **CIVIL ACTION**

**VERSUS**

                                                                 **20-626-JWD-SDJ**

**LARRY SIMON, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 28, 2022.

                                                        _____
                                                        **SCOTT D. JOHNSON**
                                                        **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**COREY MARQUEE ADAMS (#357624)**   CIVIL ACTION

**VERSUS**

**LARRY SIMON, ET AL.**   20-626-JWD-SDJ

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Cross Motions for Summary Judgment filed on behalf of Plaintiff (R. Doc. 34) and Defendants (R. Doc. 35).

The *pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Larry Simon, Logan Robichaux, and Brian Guillot, complaining that his constitutional rights were violated due to the use of excessive force and deliberate indifference to his health and safety. He prays for monetary, declaratory, and injunctive relief.

Plaintiff moves for summary judgment relying upon the pleadings (which include his verified Complaint), a Statement of Undisputed Facts, a statement authored by Kristen Sewell, a Disciplinary Report dated September 18, 2019, a Request for Restitution dated September 18, 2019, an excerpt of an Unusual Occurrence Report, excerpts of Plaintiff's medical records, the Affidavit of Jason Collins, M.D., Health Care Policy No. HC-36, Department Regulation C-02-009 Use of Force, excerpts from Health Care Manual Glossary of Terms, excerpts of Employee Rules, excerpts of the disciplinary procedure manual, excerpts from LSP Correctional Officer Training Program, copies of state law, Directive No. 09.002B Security Body Cameras, an Imposition of Restitution form, and an ARP Statement authored by Captain Brian Guillot, and his own Declaration.

Defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, certified copies of a Disciplinary Report authored by Cadet Kristen Sewell and a Disciplinary Report authored by Lt. Col. Larry Simon, the Affidavit of Larry Simon, a certified copy of Plaintiff's medical and mental health records from July 2019 to February 2020, the Affidavit of Brian Guillot, the Affidavit of Logan Robichaux, Directive No. 09.002 Use of Force, a certified copy of ARP LSP 2020-0065, an Unusual Occurrence Report authored by David Perkins, an Unusual Occurrence Report authored by Larry Simon, and a certified copy of ARP LSP 2019-2401.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Verified Complaint, Plaintiff alleges the following: On September 18, 2019, Plaintiff was accused of masturbating. Defendant Simon and Captain Perkins came to Plaintiff's cell with an unknown officer with the rank of Major. Defendant Simon approached Plaintiff's cell with a can of chemical agent in one hand while the Major held a security body camera. Defendant Simon ordered Plaintiff to come to the bars to be restrained. Since Defendant Simon seemed eager to spray Plaintiff with the chemical agent, Plaintiff approached the bars and placed a hand through the tray slot while using his other hand to hold a blanket over his nose. Defendant Simon ordered Plaintiff to put the blanket down, and Plaintiff complied. As soon as Plaintiff let go of the blanket and put his other hand through the tray slot, Defendant Simon sprayed him with a long burst of chemical agent. Plaintiff felt an intense burning in his eyes, face, and upper body. Plaintiff wretched, choked, gasped, and suffered a migraine.

The officers eventually left Plaintiff's cell due to the chemical agent, but before they left, Plaintiff informed them that he was declaring a mental health emergency because he felt like killing himself. Defendant Simon then sprayed Plaintiff with a second long burst of chemical agent. Plaintiff began to cut his arm multiple times. Defendant Simon ordered Plaintiff to come

to the bars to be restrained, but he was still holding the can of chemical agent, and Plaintiff was hesitant to trust that he would not be sprayed again.

The cell entry team later arrived, and Plaintiff complied with their verbal orders. He was then escorted to the medical emergency area where the lacerations on his arm were cleaned and closed with staples. Per the orders of Defendant Simon, Plaintiff was placed on a security watch rather than a mental health extreme watch.

On the night of December 24, 2019, Plaintiff awoke while on standard watch. Defendant Robichaux, who was not assigned to Plaintiff's housing area, appeared before Plaintiff. Defendant Robichaux, who had a history of sexually harassing Plaintiff, called Plaintiff a racially derogatory word and told Plaintiff to show him his penis. Plaintiff refused Defendant Robichaux's advances, and Robichaux threatened to have Plaintiff sprayed with a chemical agent by his friend, Defendant Guillot. Defendant Robichaux left and later returned with Defendant Guillot. Defendant Guillot was hostile. Plaintiff informed Defendant Guillot that that he had been having problems with sexual harassment by Defendant Robichaux and that he wanted to make a PREA complaint. Plaintiff told Defendant Guillot about Defendant Robichaux's actions.

Plaintiff then asked Defendant Guillot if he could shower since he had not yet showered that day. Defendant Guillot told Plaintiff he could shower in the upper A.T.O.C. Plaintiff informed Defendant Guillot that the shower in that location only had cold water. Defendant Robichaux insisted that Plaintiff take a cold shower, and Defendant Guillot agreed. Plaintiff was told he could either take a cold shower or not shower at all. Plaintiff told Defendant Guillot that he was not refusing his shower but was requesting to take a warm shower in another area of the prison. Plaintiff was again offered a cold shower or no shower at all. During this encounter,

Defendant Robichaux continued to provoke Defendant Guillot, causing him to become arrogant and angry towards Plaintiff.

Plaintiff informed Defendants Guillot and Robichaux that he needed to be placed on Extreme Suicide Watch because he felt like harming himself. Defendants ignored Plaintiff and walked away. After Defendants left, Plaintiff felt very depressed and cut his arms until they bled. Defendants Guillot and Robichaux returned and threatened to spray Plaintiff with a chemical agent. Plaintiff was restrained and placed in the shower. Plaintiff's blood was cleaned from his cell, Defendants Guillot and Robichaux removed a special bag of food distributed to the inmates for Christmas, and Plaintiff was then transferred back to his cell.

Plaintiff then informed Defendant Guillot that he was thirsty and that the faucet was not working. Defendant Guillot ignored Plaintiff and left with Defendant Robichaux. Plaintiff felt like harming himself and began banging and kicking his cell door to get Guillot and Robichaux to return to his cell. Defendant Guillot returned and threatened to spray Plaintiff with a chemical agent. Plaintiff complained of dehydration and his need for water as Defendant Guillot held a body camera in one hand and a can of chemical agent in his other hand. Defendants Guillot and Robichaux then turned on the faucet water to a level that caused the plaintiff to be sprayed with water and his cell to flood. Defendants left Plaintiff soaked inside his flooded cell for the remainder of their shifts.

Defendant Guillot was not responsible for Plaintiff on the night of December 24, 2019. Rather, Sgt. Webber was charged with supervising Plaintiff and tending to his needs. Every time Defendants Guillot and Robichaux are near Plaintiff, he feels like harming himself.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court finds that the parties' Cross Motions for Summary Judgment should be denied. Specifically, the Court finds that are disputed questions of material fact as to a violation of Plaintiff's constitutional rights by Defendants. The parties have presented competing sworn accounts of the

---

[1] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts' discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

events, and the resolution of the factual disputes will require credibility determinations that are not susceptible of determination on motion for summary judgment.

With regards to Plaintiff's claim against Defendant Simon for administering a chemical agent, a use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

On September 18, 2019, Plaintiff was sprayed twice with a chemical agent by Defendant Simon. The parties have provided competing sworn accounts of these events.

With regards to the first instance, Defendant Simon states, by way of his Affidavit (R. Doc. 35-5), that he ordered Plaintiff to come to the bars to be restrained, Plaintiff refused, and chemical agent was administered to gain compliance. Conversely, Plaintiff states in his Declaration (R. Doc. 34-1) that, as soon as he complied with defendant Simon's order, he was sprayed with a chemical agent.

With regards to the second instance, Plaintiff states that, after he was sprayed with the chemical agent by Defendant Simon, he sought to declare a mental health emergency due to feeling suicidal. In response, Defendant Simon again sprayed Plaintiff with a chemical agent. *See* R. Doc. 34-1. Conversely, Defendant Simon states that, after the first administration of chemical agent, Plaintiff again refused orders to come to the bars to be restrained and instead began to cut himself. Plaintiff refused Simon's orders to stop cutting himself and come to the cell bars; therefore, Defendant Simon again administered a chemical agent to gain compliance. Defendant Simon additionally states that Plaintiff did not notify him of his intent to self-harm. *See* R. Doc. 35-5.

In resolving a motion for summary judgment, the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Accordingly, the Court cannot determine, on the record before it, whether Defendant Simon's use of force was applied maliciously and sadistically for the very purpose of causing harm as stated by Plaintiff or was used in a good faith effort to maintain or restore discipline as stated by Defendant. As such, the Cross Motions for Summary Judgment should be denied in this regard.

Turning to Plaintiff's claims for deliberate indifference, a prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). "Subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble*, *supra*.

Plaintiff states in his Declaration (R. Doc. 34-1) that, after being sprayed with a chemical agent, he told Defendant Simon that he was declaring himself a mental health emergency because he felt like killing himself. Instead of contacting the appropriate resources, Defendant Simon again sprayed Plaintiff with a chemical agent. Defendant Simon denies any knowledge of Plaintiff's suicidal ideations or intent to self-harm. He specifically asserts that Plaintiff never informed him of the same. *See* R. Doc. 35-5.

By way of their Affidavits, Defendants Robichaux and Guillot assert the following: On December 24, 2020, Defendant Robichaux was assigned as the TU Sergeant and Defendant Guillot was assigned as TU Captain. Robichaux informed Guillot that Plaintiff was racking down his cell bars. Guillot ordered Plaintiff to stop, and Plaintiff complied. Plaintiff then requested a

shower. The shower was turned on, and the water became hot after a short period. Plaintiff later, without any notice to either Defendant, began to cut himself in his cell. Defendant Guillot ordered Plaintiff to come to the bars and be restrained, and Plaintiff complied. Medical was contacted to evaluate Plaintiff. Robichaux additionally asserts that he did not sexually harass Plaintiff, and Guillot states that Plaintiff never informed him of any alleged harassment by Robichaux. Defendants also deny any knowledge that Plaintiff was suicidal or would self-harm by cutting himself. *See* R. Docs. 35-7 and 35-8.

Contrary to the Defendants account of events, Plaintiff asserts in his Declaration that he was housed in a time-out cell on standard suicide watch when he was approached by Defendant Robichaux, who asked Plaintiff to show him his penis. Plaintiff refused, and Robichaux threatened to have Plaintiff sprayed with a chemical agent by Defendant Guillot. Robichaux later returned with Guillot, and Plaintiff informed Guillot of the harassment by Robichaux and his desire to file a PREA complaint. Plaintiff requested a shower, but Robichaux and Guillot would only allow him to shower in cold water.

Robichaux and Guillot were egging each other on and were becoming more and more aggressive. Plaintiff then informed Defendants that he needed to be placed on Extreme Suicide Watch because he felt like cutting himself. Defendants ignored Plaintiff and left. Plaintiff then began cutting his arms. Guillot threatened to spray Plaintiff with a chemical agent if he did not stop the self-harm, and Plaintiff complied. He was restrained inside a shower cell while blood was cleaned from his cell. Defendants then confiscated Plaintiff's Christmas food bag as punishment.

Plaintiff later told Robichaux and Guillot that he was thirsty and that the faucet in his cell did not work. Defendants again ignored Plaintiff and left. Plaintiff again felt like harming

himself, so he began kicking and rattling the cells bars to get Robichaux and Guillot to return. Guillot threatened to spray Plaintiff with a chemical agent when he complained of dehydration. Robichaux and Guillot then turned on the faucet, causing cold water to shoot into the air and wet Plaintiff's paper garment, mattress, and cell. Robichaux laughed at Plaintiff before telling Guillot to turn the water pressure down. Plaintiff asked for dry clothes and for his cell to be mopped. Guillot responded that he would spray Plaintiff with a chemical agent if he had to return. Plaintiff remained wet and in his flooded cell until shift change. *See* R. Doc. 34-1.

Given the significant discrepancies between the accounts presented by the parties, the Court cannot determine, on the record before it, whether Defendants Simon, Robichaux, and Guillot exhibited a wanton disregard for Plaintiff's medical needs, as alleged by Plaintiff and denied by the Defendants, without evaluating the credibility of witnesses, weighing the evidence, or resolving factual disputes. Accordingly, the Cross Motions for Summary Judgment should be denied.

## RECOMMENDATION

It is recommended that the parties' Cross Motions for Summary Judgment (R. Docs. 34 and 35) be denied, and this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on March 28, 2022.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**